UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAMOUDOU CAMARA, ET AL.,

                    Plaintiffs,                 16-cv-7078 (JGK)

        - against -                             MEMORANDUM OPINION &
                                                ORDER
NICHOLAS F. KENNER, ROBERT CRESPI,
LAURA PENSIERO, JUST SALAD 600 THIRD            USDC SDNY
LLC, ET AL.,                                    DOCUMENT
                                                ELECTRONICALLY FILED
                    Defendants.                 DOC# _____
                                                DATE FILED: 3/29/18

JOHN G. KOELTL, District Judge:

     The plaintiffs, eight current and former deliverymen for

Just Salad named Famoudou Camara, Paulino J. Zapotitlan, Antonio

Altamirano Velazquez, Marco Antonio Molina Medel ("Marco

Medel"), Reymundo Molina Medel ("Reymundo Medel"), Luis V.

Panora, Bernaldo Tlaczani Carranza, and Omar Santos, bring this

action against the defendants, twenty-three Just Salad stores,[1]

Nicholas F. Kenner, Robert Crespi, and Laura Pensiero, alleging

sixteen claims under federal and state law, principally the Fair

Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq., and

---

[1] The stores the plaintiffs have sued are: Just Salad 600 Third LLC,
Just Salad GP LLC, Just Salad 134 37th St. LLC, Just Salad Partners
LLC, Just Salad 315 PAS LLC, Just Salad 320 Park Ave LLC, Just Salad
30 Rock LLC, Just Salad 706 6th Ave LLC, Just Salad WWP LLC, Just
Salad 663 Lex LLC, Just Salad Park Slope LLC, Just Salad 8th St LLC,
Just Salad 1471 3rd Ave LLC, Just Salad 1st Avenue LLC, Just Salad
Hudson Square LLC, Just Salad State Street LLC, Just Salad Herald
Square LLC, Just Salad 90 Broad Street LLC, Just Salad 2056 Broadway
LLC, Just Salad 140 8th Ave LLC, Just Salad 233 Broadway LLC, Just
Salad Woodbury LLC, and Just Salad 291 7th Avenue LLC.

the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 190 et seq. & 650 et seq., namely:

- Violations of the FLSA (count 1) and the NYLL (count 2) for illegally retaining the plaintiffs' tips;

- Violations of the FLSA and implementing regulations (count 3) and the NYLL (count 4) for taking unlawful kickbacks;

- Violations of the FLSA (count 5) and the NYLL (count 6) for willfully failing to pay the plaintiffs minimum wages by taking an illegal tip credit, see 29 C.F.R. § 531.59(b); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4;

- Violations of the FLSA (count 7) and the NYLL (count 8) for willfully failing to pay the plaintiffs overtime wages, see 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6;

- Violations of the NYLL for failing to pay "spread-of-hours" pay (count 9), see N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6;

- Violations of the NYLL for failing to keep weekly payroll records (count 10), see N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.1;

- Violations of the NYLL for failing to provide a tip credit notice at the time of hire (count 11), see N.Y. Lab. Law § 195(1)(a);

- Violations of NYLL for failing to provide the plaintiffs with pay stubs (count 12), see N.Y. Lab. Law § 195(3);

- Violations of the NYLL for failing to reimburse the plaintiffs for uniform maintenance (count 13), see N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.7;

- Breach of an implied contractual agreement by the defendants to reimburse the plaintiffs for costs associated with their bicycles and other delivery vehicles (count 14);

- Violations of 26 U.S.C. § 7434 for willfully filing fraudulent tax returns(count 15); and

- Violations of New York General Business Law § 349 (count 16).

Dkt. No. 1 ¶¶ 140-222.[2]

Camara and Zapotitlan filed this lawsuit on September 10, 2016. Dkt. No. 73-1 ¶ 1. Velazquez filed a consent to become a party plaintiff on January 10, 2017. Dkt. No. 73-1 ¶ 3. Marco Medel and Reymundo Medel filed consents to become party plaintiffs on January 12, 2017. Dkt. No. 73-1 ¶¶ 4-5. Panora filed a consent to become a party plaintiff on March 13, 2017. Dkt. No. 73-1 ¶ 6. Carranza filed a consent to become a party plaintiff on June 5, 2017. Dkt. No. 73-1 ¶ 7. Santos filed a

---

[2] For ease of reference, the Court cites the documents relevant to the pending motions by docket number rather than title.

consent to become a party plaintiff on September 7, 2017. Dkt. No. 73-1 ¶ 8.

On March 31, 2017, the plaintiffs submitted a motion for collective certification and court-authorized notice pursuant to 29 U.S.C. § 216(b), together with a memorandum of law, declarations, and exhibits in support of the motion. Dkt. No. 21. The motion became fully briefed on May 12, 2017. Dkt. Nos. 26-31.

Although the plaintiffs' collective action motion was fully briefed and discovery was ongoing, the plaintiffs did not designate their collective action submissions as a formal motion on the electronic docket when the submissions were originally filed and did not submit courtesy copies of the motion papers to the Court once the motion was fully briefed, in accordance with the Court's individual rules. See Dkt. No. 59. The first time the plaintiffs notified the Court of their fully briefed collective action motion was during a telephone conference held on September 18, 2017. See Dkt. Nos. 58-59. After that conference, the Court extended the discovery deadline to October 17, 2017, and ordered the parties to submit supplemental briefing on the collective action motion in light of the completed discovery. Dkt. Nos. 59, 62. The parties filed their supplemental briefs on November 20, and December 4, 2017. Dkt. Nos. 69-71.

The defendants then filed a motion for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure on December 13, 2017, which became fully briefed on January 24, 2018. Dkt. Nos. 72-86.

This opinion addresses both the defendants' motion for summary judgment and the plaintiffs' motion for collective certification and court-authorized notice. For the following reasons, the defendants' motion is **granted in part** and **denied in part**, and the plaintiffs' collective action motion is **denied.**

I.

The following facts are undisputed unless otherwise noted.

The defendants in this action are twenty-three Just Salad stores, Kenner, Crespi, and Pensiero. Dkt. No. 1, at 1-2; Dkt. No. 73-1 ¶¶ 9, 18, 24, 26. Kenner is the founder and an owner of Just Salad. Dkt. No. 76-10 ¶ 1; Dkt. No. 73-1 ¶ 18. Kenner "do[es] not have day-to-day involvement with or supervision of delivery personnel, including but not limited to hiring and firing decisions." Dkt. No. 76-10 ¶ 3. Crespi and Pensiero are passive investors in Just Salad who have no involvement in business operations. Dkt. No. 76-10 ¶ 4.

The plaintiffs are current and former deliverymen for various Just Salad stores.

Camara worked as a deliveryman at the 600 3rd Avenue Just Salad store from August 17, 2015, to January 22, 2016. Dkt. No.

73-1 ¶ 92.[3] Camara's regular work hours were from 11 a.m. to 6 p.m., and he would occasionally continue to work until 8 p.m. if the weather was poor. Dkt. No. 73-1 ¶ 93. Camara testified that he was informed verbally when he was hired that Just Salad would credit the tips he received on his deliveries toward his wages and that the minimum wage was posted on the wall during his orientation. But Camara did not receive a copy of Just Salad's employee handbook or any written notification regarding tip credit. Dkt. No. 73-1 ¶¶ 38, 302. Camara testified that on more than one occasion Just Salad failed to include in his paychecks the credit card tips he had received. Dkt. No. 73-1 ¶¶ 319-22. Camara testified that, in total, Just Salad retained about $200 in tips that belonged to him. Dkt. No. 73-1 ¶ 197.

Zapotitlan started working as a deliveryman at the 663 Lexington Avenue Just Salad store in October, 2013.[4] He currently works for the 320 Park Avenue Just Salad.[5] Dkt. No. 73-1 ¶ 103. Zapotitlan's regular work hours are from 10 a.m. to 2 p.m. on weekdays and from either 11 a.m. or 12 p.m. to 9 p.m. on weekends. Dkt. No. 73-1 ¶ 104. Zapotitlan testified that Just Salad directed him to perform non-tipped tasks such as moving

---

[3] The LLC associated with this store is Just Salad 600 Third LLC.

[4] The LLC associated with this store is Just Salad 663 Lex LLC.

[5] The LLC associated with this store is Just Salad 320 Park Ave LLC.

supplies from one Just Salad store to another for about thirty minutes twice each workday and that on two or three occasions he was asked to transport inventory on a three-hour trip from Queens to Just Salad stores. Dkt. No. 76-67, at 59-60. When he was hired, Zapotitlan received a written notification that purported to comply with NYLL § 195(1)(a) and that informed him Just Salad would take a tip allowance toward his wages. Dkt. No. 76-25; see also Dkt. No. 76-18; Dkt. No. 76-26. Zapotitlan also received and signed a written notification in Spanish regarding tip credit when he was hired. Dkt. No. 76-20.

Velazquez worked as a deliveryman at the 320 Park Avenue Just Salad store from March 9, 2015, to April, 2017. Dkt. No. 73-1 ¶ 117. Velazquez's regular work hours were from 11 a.m. to 2 p.m., and he would go home early about twice per week. Dkt. No. 73-1 ¶ 118. Velazquez worked about 15 hours per week for the first year he worked for Just Salad. Dkt. No. 73-1 ¶ 119. After working for Just Salad for a year, Velazquez added a shift on Mondays from 5 p.m. to 8:30 p.m., which brought his total hours per week up to 18. Dkt. No. 73-1 ¶¶ 120-21. Velazquez received three written notifications on or before February 1, 2015, August 20, 2015, and February 1, 2016, that purported to comply with NYLL § 195(1)(a) and that informed him Just Salad would take a tip allowance toward his wages. Dkt. No. 76-27; Dkt. No. 76-28; Dkt. No. 76-29. Velazquez also received and signed a

7

written notification in Spanish regarding tip credit when he was hired. Dkt. No. 76-21.

Panora worked as a deliveryman at the 37th Street and 600 3rd Avenue Just Salad stores from March, 2015, to June 2, 2016. Dkt. No. 73-1 ¶ 127.[6] Camara's regular work hours were from 10:45 a.m. to 4 p.m. at the 37th Street store, and 5 p.m. to 10 p.m. at the 600 3rd Avenue store. Dkt. No. 73-1 ¶ 128. Panora testified that Just Salad directed him to perform non-tipped tasks such as cleaning, mopping, and taking out the trash for about an hour and thirty minutes to two hours each workday. Dkt. No. 76-69, at 139. Panora received a written notification on or before February 1, 2016, that purported to comply with NYLL § 195(1)(a) and that informed him that Just Salad would take a meals allowance toward his wages. Dkt. No. 76-30. Panora testified that about eight times per month throughout his employment Just Salad failed to pay him the tips he received. Dkt. No. 73-1 ¶ 325.

Santos worked as a deliveryman at the 1471 3rd Avenue Just Salad store from February 2, 2016, to June 3, 2016. Dkt. No. 73-1 ¶ 148.[7] Santos's regular work hours at first were from 12 p.m. to 10 p.m. Dkt. No. 73-1 ¶ 150. At some point, Santos worked

---

[6] The LLC associated with the 37th Street store is Just Salad 134 37th St. LLC.

[7] The LLC associated with this store is Just Salad 1471 3rd Ave LLC.

only either in the morning or in the afternoon. Dkt. No. 73-1 ¶ 151. Santos testified that "[w]hen [he] started, [he] worked like 40 to 48 [hours per week,] and after that . . . [he] work[ed] 35 to 38 hours [per week]." Dkt. No. 76-74, at 133-34; Dkt. No. 73-1 ¶ 153. Just Salad eventually cut Santos's hours to 35 hours per week. Dkt. No. 76-74, at 134. Santos testified that this amounted to about five to six hours per day. Dkt. No. 73-1 ¶ 153. Santos testified that Just Salad directed him to perform non-tipped tasks such as cleaning, mopping, and taking out the trash for about an hour to an hour and thirty minutes each workday. Dkt. No. 76-72, at 90-95. When he was hired, Santos received a written notification that purported to comply with NYLL § 195(1)(a) and that informed him that Just Salad would take a tip allowance toward his wages. Dkt. No. 76-32. In February, 2016, Santos also electronically signed a form stating he had received a tip credit notification. Dkt. No. 76-22; see Dkt. No. 97-1.

Reymundo Medel worked as a deliveryman at the 320 Park Avenue, 600 3rd Avenue, and 30 Rockefeller Just Salad stores from January, 2009, to October, 2012. Dkt. No. 73-1 ¶¶ 135-36.[8]

---

[8] The LLC associated with the 30 Rockefeller store is Just Salad 30 Rock LLC.

Marco Medel worked as a deliveryman at the 600 3rd Avenue Just Salad store from November, 2008, to December, 2010. Dkt. No. 73-1 ¶ 144.

Carranza worked as a deliveryman at the 600 3rd Avenue Just Salad store from January, 2011, to December, 2011. Dkt. No. 73-1 ¶ 158.

Just Salad required the plaintiffs to wear wash-and-wear uniforms at work and to clean their own uniforms at the employees' expense. Just Salad also required the plaintiffs to own and maintain a bicycle to perform deliveries. The plaintiffs allege that they purchased and maintained bicycles at their own expense and that on a few deliveries they were required to pay for taxi trips. The plaintiffs have not produced any receipts or other documentation to support those allegations. Just Salad did not reimburse the plaintiffs for any costs associated with the purchase or maintenance of their bicycles, the cost of the taxi trips, or any uniform-related costs. Dkt. No. 73-1 ¶¶ 230, 250-51, 327, 329-41.

## II.

### A.

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477

U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs.
L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's
task at the summary judgment motion stage of the litigation is
carefully limited to discerning whether there are genuine issues
of material fact to be tried, not to deciding them. Its duty, in
short, is confined at this point to issue-finding; it does not
extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving
party bears the initial burden of "informing the district court
of the basis for its motion" and identifying the matter that "it
believes demonstrate[s] the absence of a genuine issue of
material fact." Celotex, 477 U.S. at 323. "Only disputes over
facts that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary
judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

In determining whether summary judgment is appropriate, a
court must resolve all ambiguities and draw all reasonable
inferences against the moving party. See Matsushita Elec. Indus.
Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing
United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see
also Gallo, 22 F.3d at 1223. Summary judgment is improper if
there is any evidence in the record from any source from which a
reasonable inference could be drawn in favor of the nonmoving
party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d

Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Trimmer v. Barnes & Noble, Inc., 31 F. Supp. 3d 618, 620-21 (S.D.N.Y. 2014).

**B.**

The defendants argue that Reymundo Medel's FLSA claims, Carranza's FLSA claims, and Marco Medel's FLSA and NYLL claims are time-barred by the applicable statutes of limitations. The defendants also argue that Reymundo Medel's and Carranza's NYLL claims should be dismissed without prejudice for lack of jurisdiction.

Claims alleging willful violations of the FLSA, such as the claims in this case, are subject to a three-year statute of limitations. 29 U.S.C. § 255(a).[9] Claims alleging violations of the NYLL are subject to a six-year statute of limitations. N.Y. Lab. Law § 198(3). Claims under the FLSA and the NYLL accrue "when the employer fails to pay the required compensation for any work week at the regular pay day for the period when the workweek ends." 29 C.F.R. § 790.21(b); see Colella v. City of

---

[9] The defendants concede that the plaintiffs have alleged willful violations of the FLSA.

12

New York, 986 F. Supp. 2d 320, 335-36 (S.D.N.Y. 2013);
Castellanos v. Mid Bronx Cmty. Housing Mgmt. Corp., No. 13-cv-3061, 2014 WL 2624759, at *3 (S.D.N.Y. June 10, 2014).

Marco Medel worked for Just Salad from November, 2008, to December, 2010, and was thus required to bring any FLSA claim arising out of employment with Just Salad by December, 2013, and any NYLL claim arising out of his employment with Just Salad by December, 2016. See 29 U.S.C. § 255(a); N.Y. Lab. Law § 198(3). Marco Medel filed his consent to become a party in this action on January 12, 2017. Dkt. No. 73-1 ¶ 4. As a result, Marco Medel's FLSA and NYLL claims are time-barred.

Reymundo Medel worked for Just Salad from January, 2009, to October, 2012, and was thus required to bring any FLSA claim arising out of employment with Just Salad by October, 2015. See 29 U.S.C. § 255(a). Reymundo Medel filed his consent to become a party in this action on January 12, 2017. Dkt. No. 73-1 ¶ 5. As a result, Reymundo Medel's FLSA claims are time-barred.

Carranza worked for Just Salad from January, 2011, to December, 2011, and was thus required to bring any FLSA claim arising out of employment with Just Salad by December, 2014. See 29 U.S.C. § 255(a). Carranza filed his consent to become a party

in this action on June 5, 2017. Dkt. No. 73-1 ¶ 7. As a result, Carranza's FLSA claims are time-barred.[10]

The plaintiffs ask the Court to exercise "pendent party jurisdiction" over Reymundo Medel's and Carranza's NYLL claims if their FLSA claims are dismissed. There is no longer an independent doctrine of "pendent party jurisdiction." <u>See</u> <u>Valencia ex rel. Franco v. Lee</u>, 316 F.3d 299, 305 (2d Cir. 2003). Any pendent claim or pendent party arguments are now governed by the statutory grant of supplemental subject matter jurisdiction in 28 U.S.C. § 1367. <u>Id.</u>

Whether to exercise supplemental jurisdiction under § 1367 "is within the sound discretion of the district court." <u>Lundy v. Catholic Health Sys. of Long Island Inc.</u>, 711 F.3d 106, 117 (2d Cir. 2013) (citing <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 349-50 (1988)). Courts "consider and weigh in each case, and at every stage of the litigation, the values of judicial

---

[10] The Court notes that Carranza failed to appear for his court-ordered deposition in October, 2017, without offering any explanation or making any effort to reschedule. Dkt. No. 59; <u>see</u> <u>Valentine v. Museum of Modern Art</u>, 29 F.3d 47, 49-50 (2d Cir. 1994) (per curiam) (Rule 37(b)(2) of the Federal Rules of Civil Procedure authorizes a district court to dismiss a pending action when the plaintiff fails to obey an order to appear for a deposition upon finding "willfulness, bad faith, or any fault on the part of the prospective deponent" (quoting <u>Bobal v. Rensselaer Polytechnic Inst.</u>, 916 F.2d 759, 764 (2d Cir. 1990))). The plaintiffs failed to address Carranza's failure to appear in their brief in opposition to the defendants' motion for summary judgment. <u>See</u> <u>Scott v. JPMorgan Chase & Co.</u>, No. 13-cv-646, 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014) (holding that a plaintiff forfeits any claim not defended in the plaintiff's brief in opposition).

economy, convenience, fairness, and comity" to decide whether to exercise supplemental jurisdiction. Lundy, 711 F.3d at 117–18. These factors counsel against hearing state law claims when the federal claims against a party are dismissed at an early stage in the litigation. See 28 U.S.C. § 1367(c)(3); Heard v. MTA Metro-N. Commuter R.R. Co., No. 02-cv-7565, 2003 WL 22176008, at *3 (S.D.N.Y. Sept. 22, 2003); see also Sklodowska-Grezak v. Stein, 236 F. Supp. 3d 805, 810 (S.D.N.Y. 2017).

The Court will not exercise supplemental jurisdiction over Reymundo Medel's and Carranza's NYLL claims. Any concerns about judicial economy, convenience, and fairness are limited because this case is still at a relatively early stage of the litigation -- discovery is closed with respect to Reymundo Medel and open with respect to Carranza because Carranza failed to appear for his court-ordered deposition. See, e.g., Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

While there may be some overlap at a high level of generality between Reymundo Medel's and Carranza's NYLL claims on one hand and the remaining plaintiffs' FLSA and NYLL claims on the other, the proof that would support Reymundo Medel's and Carranza's claims is sufficiently distinct from the proof of the remaining plaintiffs' claims that it would not be unfair or

inconvenient to dismiss Reymundo Medel's and Carranza's NYLL claims without prejudice. Much of the plaintiffs' evidence is unique to each plaintiff. For example, Reymundo Medel and Carranza were paid hourly rates that differed from each other and from all other plaintiffs, the paystubs for each plaintiff were kept and maintained separately, each plaintiff had different tenures at Just Salad, each plaintiff was subject to individualized intake procedures, and each plaintiff had different work schedules. See Dkt. No. 73-1 ¶¶ 135-37, 158; Dkt. No. 76-41; Dkt. No. 76-42, Dkt. No. 76-43; Dkt. No. 76-44; see also Kirschner v. Klemons, 225 F.3d 227, 239 (2d Cir. 2000) (declining to exercise supplemental jurisdiction over state law claims against an additional potential defendant because they did not arise out of the same set of facts as the federal claims).

Accordingly, Reymundo Medel's FLSA claims, Carranza FLSA claims, and Marco Medel's FLSA and NYLL claims are dismissed with prejudice as time-barred, and Reymundo Medel's and Carranza's NYLL claims are dismissed without prejudice for want of subject-matter jurisdiction.

### C.

The defendants argue that Kenner, Crespi, and Pensiero should be dismissed entirely because they were not "employers" within the meaning of the FLSA or the NYLL.

Liability under the FLSA extends only to "employer[s]." 29 U.S.C. § 216(b); see Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "An entity 'employs' an individual under the FLSA if it 'suffer[s] or permit[s]' that individual to work." Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) (quoting 29 U.S.C. § 203(g)). For an individual to be an employer, there must be more than just "[e]vidence that [the] individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function. . . . Instead, to be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." Irizarry v. Catsimatidis, 722 F.3d 99, 109 (2d Cir. 2013). "[T]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts." Id. at 104 (internal quotation marks omitted).

The Court of Appeals for the Second Circuit has established a four-factor test to determine the "economic reality" of an employment relationship: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and

controlled employee work schedules or conditions of employment,
(3) determined the rate and method of payment, and
(4) maintained employment records." Id. at 105 (quoting Carter
v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)). This
set of factors is intended to be "nonexclusive and overlapping,"
and the factors are to be applied so as "to ensure that the
economic realities test . . . is sufficiently comprehensive and
flexible to give proper effect to the broad language of the
FLSA." Irizarry, 722 F.3d at 105 (internal quotation marks
omitted). A person or entity can also be an "employer" if the
person or entity exercises functional control over the employee.
Zheng v. Liberty Apparel Co., 355 F.3d 61, 71-72 (2d Cir. 2003);
Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 939-40
(S.D.N.Y. 2013).

   Liability under the NYLL similarly extends only to
"employer[s]" and their "agent[s]." N.Y. Lab. Law § 662(1). The
definition of "employer" under the NYLL is "any person . . .
employing any individual in any occupation, industry, trade,
business or service" or "any individual . . . acting as
employer." N.Y. Lab. Law §§ 190(3) & 651(6). The New York Court
of Appeals has not yet answered the question of whether the test
for "employer" status is the same under the FLSA and the NYLL,
see Irizarry, 722 F.3d at 117, but courts have generally assumed
that it is, see Sethi v. Narod, 974 F. Supp. 2d 162, 188-89

(E.D.N.Y. 2013); <u>Chu Chung v. New Silver Palace Rests., Inc.</u>, 272 F. Supp. 2d 314, 318 n. 6 (S.D.N.Y. 2003); <u>see also</u> <u>Ramirez v. Riverbay Corp.</u>, 35 F. Supp. 3d 513, 520-21 & n.2 (S.D.N.Y. 2014).

Crespi and Pensiero plainly are not "employers" under the FLSA or NYLL. Crespi and Pensiero appear to be passive investors with no role in -- much less formal or functional control over -- the day-to-day operations of any Just Salad store. Dkt. No. 76-10 ¶ 4. There is no evidence in the record that either Crespi or Pensiero could hire or fire any employee, that they supervised or controlled any employee's work schedule or conditions of employment, that they played any role in determining rate and methods of payment, or that they participated in maintaining employment records. Crespi and Pensiero therefore cannot be held liable for any FLSA or NYLL violation in this case.

Similarly, no reasonable jury could find based on the evidence in this record that Kenner was the plaintiffs' "employer." Although he is an owner and founder of Just Salad, the defendants' evidence indicates that Kenner has no involvement in supervising delivery personnel and does not make hiring or firing decisions with regard to delivery personnel. Dkt. No. 76-10 ¶ 3. The plaintiffs have not submitted any evidence regarding Kenner's role in any Just Salad store. Kenner

therefore cannot be held liable for any FLSA or NYLL violation in this case. See Irizarry, 722 F.3d at 109 ("Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status. Instead, to be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment.").

The plaintiffs argue that Kenner, Crespi, and Pensiero nevertheless can be held liable under New York Limited Liability Company Law § 609(c). Section 609(c) provides that the limited liability company members with the ten largest ownership stakes can be held personally liable, jointly and severally, for "all debts, wages or salaries due and owing to any of its laborers, servants or employees, for services performed by them for such limited liability company." N.Y. Ltd. Liab. Co. Law § 609(c). But that obligation is triggered only after the employee has served the members with timely notice of the employee's intent to invoke section 609(c) liability and after "an execution unsatisfied against the limited liability company upon a judgment recovered against it for such services" has been returned. Id.; see Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. Nguyen, No. 15-cv-5399, 2017 WL 698606, at *5 n.7 (S.D.N.Y. Feb. 17,

2017). The plaintiffs have satisfied neither precondition in this case.

Accordingly, Kenner, Crespi, and Pensiero are entitled to summary judgment dismissing all claims against them.

### D.

The defendants argue that seventeen of the Just Salad stores named as defendants in this action were not "employers" under the FLSA and NYLL because the named plaintiffs did not work at these locations, the plaintiffs did not speak to any workers from these stores about this case, and one of the stores does not even offer a delivery service.[11] The named plaintiffs counter that these seventeen stores are liable under the so-called single integrated enterprise theory.

The single integrated enterprise theory originally grew out of Title VII doctrine. Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005). It holds multiple legally distinct entities liable as a single employer when the entities are a single integrated enterprise, as in the case of "parent and wholly-owned subsidiary corporations, or separate

---

[11] The LLCs associated with these stores are: Just Salad GP LLC, Just Salad Partners LLC, Just Salad 315 PAS LLC, Just Salad 706 6th Ave LLC, Just Salad WWP LLC, Just Salad 663 Lex LLC, Just Salad Park Slope LLC, Just Salad 8th St LLC, Just Salad 1st Avenue LLC, Just Salad Hudson Square LLC, Just Salad State Street LLC, Just Salad 90 Broad Street LLC, Just Salad 2056 Broadway LLC, Just Salad 140 8th Ave LLC, Just Salad 233 Broadway LLC, Just Salad Woodbury LLC, and Just Salad 291 7th Avenue LLC. Just Salad Woodbury LLC is the store that does not offer delivery.

corporations under common ownership and management." Id. Whether a group of entities qualifies as a single integrated enterprise turns on a four-factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Brown v. Daikin Am. Inc., 756 F.3d 219, 226 (2d Cir. 2014) (quoting Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240 (2d Cir. 1995)). No one factor is dispositive; "control of labor relations is the central concern." Id. (quoting Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996)).

The Second Circuit Court of Appeals has yet to apply the single integrated enterprise rule to FLSA liability. Some district courts in this Circuit have applied the single integrated enterprise doctrine in the FLSA context. See, e.g., Flores v. 201 W. 103 Corp., 256 F. Supp. 3d 433, 440-41 (S.D.N.Y. 2017); Li v. Ichiro Sushi, Inc., No. 14-cv-10242, 2016 WL 1271068, at *6 (S.D.N.Y. Mar. 29, 2016); Cordova v. SCCF, Inc., No. 13-cv-5665, 2014 WL 3512838, at *3 (S.D.N.Y. July 16, 2014); Lopez v. Pio Pio NYC, Inc., No. 13-cv-4490, 2014 WL 1979930, at *3 (S.D.N.Y. May 14, 2014). Other district courts in this Circuit have declined to apply the formal single integrated enterprise doctrine in the FLSA context and have instead used the traditional economic realities test to determine whether multiple legal entities constitute a single employer for FLSA

purposes. See, e.g., Olvera v. Bareburger Grp. LLC, 73 F. Supp. 3d 201, 205-06 (S.D.N.Y. 2014); Hart, 967 F. Supp. 2d at 939-40 & n.16; Gorey v. Manheim Servs. Corp., 788 F. Supp. 2d 200, 210 (S.D.N.Y. 2011).

It is unnecessary at this point to decide which test to apply because the plaintiffs have failed to identify sufficient evidence that all of the Just Salad franchisee stores are a single employer under either the single integrated enterprise test or the economic realities test. Although the plaintiffs have cited evidence that all Just Salad employees are required to wear similar uniforms, use similar delivery devices, and are subject to a uniform employee manual, they have failed to explain how the stores where the plaintiffs did not work had any control or supervision over them. The plaintiffs have also failed to demonstrate that all of the Just Salad stores are part of the same corporate structure or under common ownership and management. Notably, they have not identified or sued any Just Salad franchisor or any corporate parent entity that might control all of the Just Salad stores. They have presented no evidence that the stores at which the plaintiffs did not work had any input into the employment decisions or human resources decisions at the stores where the plaintiffs worked. Courts deciding summary judgment motions in similar situations have routinely held that franchisees are not joint employers. See

Reese v. Coastal Restoration & Cleaning Servs., Inc., No 10-cv-36, 2010 WL 5184841, at *3-*5 (S.D. Miss. Dec. 15, 2010); Singh v. 7-Eleven, Inc., No. c-05-4534, 2007 WL 715488, at *3-*6 (N.D. Cal. Mar. 8, 2007) (economic realities test); see also Hatcher v. Augustus, 956 F. Supp. 387, 390-93 (S.D.N.Y. 1997) (finding franchisor and franchisees not a single employer for Title VII purposes).

Accordingly, the seventeen Just Salad stores where the plaintiffs did not work are entitled to summary judgment on the ground that they were not the plaintiffs' "employers."

E.

The defendants argue that they are entitled to summary judgment on the plaintiffs' claims of illegally retaining tips (counts 1 and 2) and taking unlawful kickbacks associated with stealing tips (counts 3 and 4) for failure of proof.

The plaintiffs concede that there is no evidence in the record that Just Salad illegally retained or stole any tips that Zapotitlan, Velazquez, or Santos received. See Dkt. No. 73-1 ¶¶ 69, 168, 319-26. Therefore, all illegal retention and illegal kickback claims brought by those three plaintiffs must be dismissed.

Camara and Panora have met the minimum threshold of proof to survive the defendants' motion for summary judgment for these claims. Both of these plaintiffs testified that Just Salad

illegally retained credit card tips that they had received. Dkt. No. 73-1 ¶¶ 319-26. The defendants offer two unpersuasive arguments for disregarding that testimony. First, the defendants contend that Camara and Panora are not credible because both plaintiffs signed regular tip reporting forms acknowledging that they were paid proper tips, Panora never complained about missing tips, and Camara testified at his deposition that his affidavits overstated the amount of his tips that Just Salad illegally retained. See Dkt. No. 76-66, at 143-45 (Camara testifying that his tips were retained ten or eleven times in amounts of seven to ten dollars each time, not twenty dollars every day as stated in his affidavit). Witness credibility is generally a question for a finder of fact, not a proper ground on which to award summary judgment. Proctor v. LeClaire, 846 F.3d 597, 607-08 (2d Cir. 2017). Second, the defendants argue that Camara's and Panora's claims should be dismissed because the tip amounts they claim Just Salad illegally retained were de minimis. But the defendants fail to cite any support for the proposition that there is a de minimis exception to FLSA or NYLL claims arising out of illegal retention of tips.

Accordingly, the defendants are entitled to summary judgment dismissing only Zapotitlan's, Velazquez's, and Santos's claims under counts 1, 2, 3, and 4.

**F.**

The defendants argue that they are entitled to summary judgment on the wage notice claims under NYLL § 195(1)(a) (count 11) brought by Zapotitlan, Velazquez, Santos, and Panora.

Under the Wage Theft Prevention Act, an employer must provide employees with a wage notice containing information such as rate of pay and tip allowances at the time of hiring and annually on or before the first of February thereafter. See N.Y. Lab. Law § 195(1)(a); see also Cucu v. 861 Rest. Inc., No. 14-cv-1235, 2017 WL 2389694, at *6 (S.D.N.Y. June 1, 2017). The wage notice must contain, among other things, "allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; . . . the physical address of the employer's main office or principal place of business, and a mailing address if different; . . . [and] the employer's telephone number." Quintero v. Anjudiromi Contr. Corp., 16-cv-8781, 2018 WL 1027716, at *6 (S.D.N.Y. Feb. 21, 2018). If the employer fails to provide a proper wage notice, the employees are entitled to recover statutory damages. 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Lab. Law § 198(1-b); see also Cucu, 2017 WL 2389694, at *6.

In 2010, the New York State Legislature added an affirmative defense to section 195(1)(a) claims. 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Lab. Law § 198(1-b). Under this

provision, it is a complete defense to section 195(1)(a) liability if "(i) the employer made complete and timely payment of all wages due . . . to the employee who was not provided notice . . . or (ii) the employer reasonably believed in good faith that it was not required to provide the employee with notice." N.Y. Lab. Law 198(1-b); see Quintero, 2018 WL 1027716, at *7.

The defendants concede that Zapotitlan, Panora, and Santos never received completely sufficient section 195(1)(a) notices when they were hired. Zapotitlan's notice was insufficient because it did not contain Just Salad's mailing address or telephone number; Panora's notice was insufficient because it checked the "meals" allowance box rather than the "tips" allowance box; and Santos's notice was insufficient because it did not contain Just Salad's physical mailing address. Dkt. No. 76-25; Dkt. No. 76-30; Dkt. No. 76-32. The defendants have also failed to submit any section 195(1)(a) notice signed by Velazquez on his date of hire.

The defendants argue that they are entitled to summary judgment nevertheless because they satisfy the affirmative defense of section 198(1-b). The defendants have proven that Zapotitlan, Velazquez, and Santos each received complete and timely payment of all wages due, and thus that they are entitled to the section 198(1-b) defense with regard to those plaintiffs.

See Dkt. No. 73-1 ¶¶ 69, 168, 319-26. But, as explained above, it remains a disputed issue of fact whether the defendants paid Panora all of the tips he received, and the defendants have failed to produce evidence that they believed in good faith that they were not required to provide Panora with a section 195(1)(a) notice. Thus, the defendants are not entitled to summary judgment on their affirmative defense to Panora's section 195(1)(a) claim.

Accordingly, the defendants are entitled to summary judgment dismissing only Zapotitlan's, Velazquez's, and Santos's count 11 claims.

**G.**

The defendants argue that they are entitled to summary judgment on the plaintiffs' minimum wage claims (counts 5 and 6).

The plaintiffs assert that the defendants violated the FLSA's and NYLL's minimum wage requirements by (1) crediting the plaintiffs' tips toward their paychecks while illegally retaining some of the tips the plaintiffs received, (2) crediting the plaintiffs' tips toward their paychecks without providing proper notification on the plaintiffs' dates of hire, and (3) causing the plaintiffs to perform non-tipped tasks for more than 20% of their work time.

**1.**

Under both the FLSA and the NYLL, an employer claiming tip credits must ensure that its employees retain all of the tips they received and that the total wages plus tips the employees receive is equal to or greater than the minimum wage. Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011). As discussed above, the plaintiffs have established material questions of fact as to whether Just Salad included in Camara's and Panora's paychecks all of the credit card tips they received. Thus, the defendants are not entitled to summary judgment on Camara's and Panora's minimum wage claims.[12]

**2.**

The FLSA permits an employer to pay tipped employees a fixed hourly rate less than the federal minimum wage as long as the employee's tips raise the employee's effective hourly wage rate above the minimum wage. See 29 U.S.C. § 203(m). An employer may not claim such a tip credit unless it has informed the employee of the provisions of the section of the FLSA permitting the tip credit. See Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015).

The employer bears the burden of showing that it satisfied the notice requirement by, for example, "providing employees

---

[12] As noted above, there is no suggestion in the record that Just Salad illegally retained Santos's, Zapotitlan's, or Velazquez's tips.

with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law." Id. "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage." Inclan, 95 F. Supp. 3d at 497 (quoting Reich v. Chez Robert, Inc., 28 F.3d 401, 403 (3d Cir. 1994)). "Even if the employee received tips at least equivalent to the minimum wage," the notice provision must be satisfied. Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002); see also Cucu, 2017 WL 2389694, at *3.

"New York state law allows employers to credit a portion of an employee's tips . . . as allowances against the minimum wage requirement when certain preconditions are met." Copantitla, 788 F. Supp. 2d at 290 (quoting Padilla v. Manlapaz, 649 F. Supp. 2d 302, 309 (E.D.N.Y. 2009)); see N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2(a). First, "[p]rior to the start of employment, an employer [must] give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2(a). The notice must "also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate," and must be

provided to the employee in English and in any other language spoken by the employee as a primary language. Id. Second, "acknowledgment of receipt [of this notice] signed by the employee [must] be kept on file for six years." Id. § 146-2.2(c). As with the FLSA, it is the employer's burden to prove compliance with the NYLL notice requirement. Id. § 146-2.2(d).

The defendants have not established as a matter of law that Camara received tip credit notifications that complied with 29 U.S.C. § 203(m) or the applicable NYLL regulations. The only evidence the defendants rely on to demonstrate that Camara was notified of the tip credits upon being hired is that Camara attended an orientation at which the minimum wage was posted on the wall and that Camara testified that he was aware of the tip credit when he was hired. Dkt. No. 73-1 ¶ 38. That evidence alone would not compel a reasonable jury to find that Just Salad met the written notice requirements of the FLSA and NYLL with respect to Camara.

The defendants have not established as a matter of law that they provided proper tip credit notification to Panora either. The only evidence the defendants rely on to assert that Panora received tip credit notifications are paystubs, which Just Salad issued to Panora after his first date of employment. Dkt. No. 76-38. Therefore, a reasonable jury could conclude based on the present record that the defendants have failed to establish that

Panora received proper notification prior to the start of his employment at Just Salad as the FLSA and NYLL require.

The defendants have also failed to establish as a matter of law that they provided proper tip credit notification to Santos or Velazquez. The defendants have submitted tip credit notifications that purportedly bear Velazquez's signature, that are dated on Velazquez's date of hire, and that would satisfy 29 U.S.C. § 203(m) and the applicable NYLL regulations. Dkt. No. 76-21; Dkt. No. 76-22; Dkt. No. 97-1. But the plaintiffs have submitted transcripts of deposition testimony in which Santos and Velazquez each states that he never signed such a document and denies that the signature on the notification page submitted by the defendants is his authentic signature. Dkt. No. 93-6; Dkt. No. 93-7; Dkt. No. 93-8. That raises questions of fact as to whether Santos or Velazquez actually received, read, and signed sufficient tip credit notifications when he was hired.[13]

---

[13] The defendants attempt to rely on the affirmative defense to NYLL liability that "a food service employer is eligible to claim the tip credit even when they fail to provide written notice of the tip credit rules, provided that the employer can demonstrate compliance with all of the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit." Carvente-Avila v. Chaya Mushkah Rest. Corp., No. 12-cv-5359, 2016 WL 3221141, at *1 (S.D.N.Y. Mar. 1, 2016) (brackets omitted). However, the defendants are not entitled to this defense with regard to Camara or Panora because it remains an open question whether the defendants complied with the requirement that Camara and Panora be permitted to retain all of the tips they received. And the defendants are not entitled to this defense with regard to Santos or Velazquez because they do not cite any evidence other than the notifications that Santos and Velazquez deny signing to prove that Santos and Velazquez

However, the defendants have established that Zapotitlan received the proper tip notification. Just Salad has produced the date-of-hire Spanish-language tip credit notifications that Zapotitlan received, which the plaintiffs do not dispute comply with 29 U.S.C. § 203(m) and the applicable NYLL regulations. Dkt. No. 76-20. The plaintiffs' only response is that Zapotitlan's notifications are insufficient because they did not comply fully with NYLL § 195(1)(a). But the defendants do not rely on the section 195(1)(a) notifications to prove compliance with the FLSA and NYLL minimum wage laws. Instead, they rely on separate notifications Zapotitlan received as part of their employee handbooks. The plaintiffs do not argue that the notifications on which the defendants actually rely are insufficient under 29 U.S.C. § 203(m) or the NYLL regulations governing the elements of proof for a minimum wage claim, see N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2(a).

3.

"Under the FLSA, tipped employees who spend a substantial amount of time, or more than twenty percent of their working time, engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work." Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d

---

understood the manner in which the defendants took a tip credit toward their wages.

442, 470 (S.D.N.Y. 2015) (internal quotation marks and brackets omitted). "Under the NYLL, if a tipped employee performs non-tipped work '(a) for two hours or more, or (b) for more than 20 percent of his or her shift, whichever is less, the wages of the employee shall be subject to no tip credit for that day.' " Id. (quoting N.Y. Comp. Codes R. & Regs. tit. 12. § 146-2.9) (emphasis omitted).

Only Santos, Panora, and Zapotitlan claim that they performed non-tipped work. Dkt. No. 76-67, at 59-60; Dkt. No. 76-69, at 139; No. 76-72, at 90-95. The defendants offer various reasons why it would be impossible for Santos, Panora, or Zapotitlan to have performed non-tipped work for two hours or twenty percent of the their working time -- because Just Salad has strict policies designed to prevent deliverymen from performing non-tipped work for that amount of time in a given workday; because the plaintiffs were told to notify human resources if they were ever asked to perform non-tipped work for that amount of time; because the plaintiffs could not have generated the amount of tip income they received if they had been performing that much non-tipped work; because the amount of time the plaintiffs testified it took to perform each delivery did not leave room for that much non-tipped work; and because the plaintiffs have general credibility issues. All of these

points are factual arguments that should be made to a jury, not grounds for summary judgment. See Proctor, 846 F.3d at 607-08.

Accordingly, the defendants have failed to establish that they are entitled to summary judgment on any of the plaintiffs' minimum wage claims under counts 5 and 6.

H.

The defendants argue that they are entitled to summary judgment on the plaintiffs' overtime claims (counts 7 and 8). The plaintiffs assert that they were not paid the proper amount of overtime because the defendants illegally credited tips toward all of the plaintiffs' wages, including their overtime wages.

Pursuant to § 207 of the FLSA, employees must be compensated "at a rate not less than one and one-half times the regular rate at which [they are] employed" for every hour worked in excess of forty in a given workweek. 29 U.S.C. § 207(a)(1); see also Hypolite v. Health Care Servs. of N.Y. Inc., 256 F. Supp. 3d 485, 491 (S.D.N.Y. 2017). The NYLL contains the same rule. Inclan, 95 F. Supp. 3d at 498 (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4).

The evidence with regard to each plaintiff's overtime work varies. Velazquez testified that he never worked any overtime. Dkt. No. 73-1 ¶ 85. But there is record evidence that Panora, Santos, Camara, and Zapotitlan worked overtime. Dkt. No. 73-1

¶¶ 83-84, 89, 90. The defendants argue that these plaintiffs cannot make out an overtime claim because they were paid at the overtime rate for this work. That misses the point of the plaintiffs' argument. The plaintiffs assert that the overtime pay rate was itself legally insufficient because the defendants took illegal tip credits toward that rate. Thus, Panora's, Santos's, Camara's, and Zapotitlan's overtime claims must remain in the case for the same reasons that their minimum wage claims survive this motion for summary judgment: because there are material issues of fact as to whether the defendants were paid the proper minimum wage taking into account the proper tip credits.

Accordingly, the defendants are entitled to summary judgment dismissing only Velazquez's claims under counts 7 and 8.

## I.

The defendants argue that they are entitled to summary judgment on the plaintiffs' claims for reimbursement of uniform maintenance costs (count 13) and costs associated with purchasing and maintaining delivery bicycles (count 14).

Under New York law, employers are typically required to pay "uniform maintenance pay" for the maintenance of their employees' required uniforms. See N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.7(b). But under the "wash and wear" exemption:

> An employer will not be required to pay
> the uniform maintenance pay, where required
> uniforms
>
> (1) are made of "wash and wear" materials;
>
> (2) may be routinely washed and dried with
> other personal garments;
>
> (3) do not require ironing, dry cleaning,
> daily washing, commercial laundering, or
> other special treatment; and
>
> (4) are furnished to the employee in
> sufficient number, or the employee is
> reimbursed by the employer for the purchase
> of a sufficient number of uniforms,
> consistent with the average number of days
> per week worked by the employee.

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.7(b); see also

Cucu, 2017 WL 2389694, at *4.

The defendants argue persuasively that the plaintiffs'

uniforms fit this "wash and wear" exception. The plaintiffs'

uniforms were made of "wash and wear" material, they were washed

by the plaintiffs themselves, and there is no indication that

the uniforms required any special cleaning procedures, such as

ironing or dry cleaning. Moreover, the plaintiffs do not respond

to this argument in their brief. They thereby forfeit any

challenge to the defendants' invocation of the "wash and wear"

exception. See Scott, 2014 WL 338753, at *10.

The FLSA and NYLL permit an employer to shift to employees

the cost of purchasing and maintaining "tools of the trade,"

such as the delivery bicycles in this case, so long as those

costs do not reduce the employees' wages below the minimum wage. Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010). The plaintiffs' claims that Just Salad unlawfully required them to bear the costs of delivery bicycles must be dismissed for failure of proof. The plaintiffs have not produced any receipts or other documentation proving the amount they spent on purchasing and maintaining delivery vehicles, or paying taxi fares. Neither have the plaintiffs performed the necessary calculation of deducting their expenses associated with deliveries from their total wages to prove that they received less than the minimum wage.

Accordingly, the defendants are entitled to summary judgment on counts 13 and 14.

### J.

The defendants argue that (1) the plaintiffs' "spread-of-hours" claims (count 9) should be dismissed because only Panora asserts that he worked more than ten hours per day, and that assertion is unsupported and undermined by record evidence; (2) the plaintiffs' payroll records claims (count 10) and pay subs claims (count 12) should be dismissed because the defendants complied with their statutory obligations; and (3) the plaintiffs' tax claims (count 15) and General Business Law § 349 claims (count 16) should be dismissed because the plaintiffs' cannot establish that the defendants willfully filed any

fraudulent tax returns. The plaintiffs do not respond to these arguments in their brief and thereby abandon them. Accordingly, the defendants are entitled to summary judgment dismissing counts 9, 10, 12, 15, and 16. See Scott, 2014 WL 338753, at *10.

## III.

### A.

The FLSA authorizes a district court, in its discretion, to implement the FLSA's remedial provision by certifying a collective action. 29 U.S.C. § 216(b); Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010). A collective action "facilitate[e]s notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Id. (internal quotation marks omitted); see also Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989).

The Second Circuit Court of Appeals has adopted a two-stage analysis to determine whether to certify a collective action. Myers, 624 F.3d at 555.

At the first stage, the court must make "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. This initial determination turns on whether the plaintiffs can make "a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan

that violated the law.' " Id. (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)). This "modest factual showing" is "a low standard of proof," but it "cannot be satisfied simply by 'unsupported assertions.' " Id. (quoting Dybach v. Dep't of Corr., 942 F.2d 1562, 1562, 1567 (11th Cir. 1991)).

At the second stage of the collective certification analysis, the court must determine, after the record has been fully developed, whether the plaintiffs who opted in after receiving notice are in fact similarly situated to the named plaintiffs. Id. "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Id. (citing Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1261 (11th Cir. 2008); Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001)). Courts consider three factors to decide whether the opt-in plaintiffs are similarly situated to the named plaintiffs: "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against collective action treatment." Scott v. Chipotle Mexican Grill, Inc., No. 12-cv-8333, 2017 WL 1287512, at *8 (S.D.N.Y. Mar. 29, 2017) (quoting

*Hernandez v. Fresh Diet, Inc.*, No. 12-cv-4339, 2014 WL 5039431, at *3 (S.D.N.Y. Sept. 29, 2014)).

## B.

The plaintiffs move for conditional certification of a collective action consisting of all current and former delivery persons employed by the defendants at all of the Just Salad locations who worked from September 10, 2013, through the present, who did not receive the proper overtime compensation, who did not receive wages equal to or greater than the minimum wage, and whose tips the defendants unlawfully retained.

This motion arises in an unusual procedural context. As described above, the plaintiffs moved for a collective action at the beginning of discovery but did not seek to have the motion heard in time for the Court to resolve it before discovery concluded. This motion therefore straddles both stages of the procedure to determine whether to certify a collective action -- the plaintiff seeks court-authorized notice to solicit further opt-in plaintiffs even though five plaintiffs have already opted in without such notice[14] and the record is developed enough for the Court to determine whether this case is appropriate for a collective action. In this posture, the Court has reviewed the

---

[14] The plaintiffs who have already opted in are Velazquez, Marco Medel, Reymundo Medel, Panora, Carranza, and Santos. However, the Court has already determined, as discussed above, that the claims of Marco Medel, Reymundo Medel, and Carranza should be dismissed.

record and determined that the plaintiffs have not met even the "modest" threshold at the first stage of collective action analysis to demonstrate that they may be similarly situated because they "were victims of a common policy or plan that violated the law." See Myers, 624 F.3d at 555.

There is no evidence that the plaintiffs' allegations arise from a common policy or plan. The only uniform policy that the plaintiffs alleged applied to all Just Salad delivery persons was the employee handbook. The plaintiffs do not explain how that handbook caused their tips to be illegally retained, caused them to be paid less than the minimum wage, or caused them to be denied overtime compensation. The plaintiffs have pointed to no portion of the employee handbook that encourages or endorses unlawful employment practices.

Rather, the factual and employment setting that gave rise to each plaintiff's claim is different. The named plaintiffs, together with the plaintiffs who have already opted in, worked at six of the twenty-three Just Salad stores. It is undisputed that each Just Salad store was run by a different manager who determined the unique working conditions and working hours for each employee at each store. The plaintiffs' allegations stemming from allegedly illegally retained tips arise out of the unique experiences each plaintiff had while working at his unique Just Salad store.

As the summary judgment analysis above demonstrates, the nature of each plaintiff's claim and of the defenses available for each claim differ significantly. Two plaintiffs allege that the defendants illegally retained their tips, while all of the others do not. Some of the plaintiffs allege that they did not receive any written notification of the defendants' intention to take tip credits, while others allege that they received written tip credit notification that was insufficient, while others clearly received sufficient written tip credit notification. Some of the plaintiffs claim that they performed non-tipped work for hours at a time, while others claim that they performed short non-tipped tasks, and others did not perform any non-tipped work at all. Some plaintiffs claim that they worked overtime, while others do not.[15]

Finally, fairness and procedural considerations do not counsel in favor of proceeding by collective action. The plaintiffs belatedly brought this motion to the attention of the Court at the end of discovery. Moreover, this is not the first time this plaintiffs' counsel has brought an untimely collective

---

[15] This case stands in contrast to Rosario v. Valentine Avenue Discount Store, Co., 828 F. Supp. 2d 508 (E.D.N.Y. 2011). There, the named plaintiff and the prospective opt-in plaintiff submitted detailed affidavits describing how they worked at many of the stores controlled by the defendant over many years and had similar experiences of working more than 40 hours per week without being paid overtime. Id. at 514–15. The evidence in this case, as discussed above, is not nearly as consistent or as blatantly in violation of the FLSA and NYLL as the evidence in Rosario.

action motion against these same defendants. In Rea v. Just Salad 600 Third LLC, No. 15-cv-10183, Dkt. No. 38 (S.D.N.Y.), this Court denied as untimely this same plaintiffs' counsel's motion for collective action on behalf of a group of Just Salad delivery persons who had sued for similar FLSA and NYLL violations. Rea was eventually resolved when the plaintiffs accepted offers of judgment from the defendants pursuant to Rule 68 of the Federal Rules of Civil Procedure. It is apparent that plaintiffs' counsel has repurposed some of the affidavits from the untimely motion in Rea for the present motion for collective certification in this case. Indeed, plaintiffs' counsel conceded at oral argument that the present collective action motion the same motion as the one plaintiffs' counsel brought in Rea. Fairness does not counsel in favor of granting the present motion.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion for summary judgment is **granted in part** and **denied in part** as follows:

- All of Marco Medel's FLSA and NYLL claims are **dismissed with prejudice;**

- All of Carranza's FLSA claims are **dismissed with prejudice**, and all of his NYLL claims are **dismissed without prejudice**;

- All of Reymundo Medel's FLSA claims are **dismissed with prejudice**, and all of his NYLL claims are **dismissed without prejudice**;

- All of Camara's, Zapotitlan's, Velazquez's, Panora's and Santos's FLSA and NYLL claims against Kenner, Crespi, Pensiero, Just Salad GP LLC, Just Salad Partners LLC, Just Salad 315 PAS LLC, Just Salad 706 6th Ave LLC, Just Salad WWP LLC, Just Salad 663 Lex LLC, Just Salad Park Slope LLC, Just Salad 8th St LLC, Just Salad 1st Avenue LLC, Just Salad Hudson Square LLC, Just Salad State Street LLC, Just Salad 90 Broad Street LLC, Just Salad 2056 Broadway LLC, Just Salad 140 8th Ave LLC, Just Salad 233 Broadway LLC, Just Salad Woodbury LLC, and Just Salad 291 7th Avenue LLC are **dismissed with prejudice**;

- Zapotitlan's, Velazquez's, and Santos's claims under counts 1, 2, 3, 4, and 11 are **dismissed with prejudice**;

- Velazquez's claims under counts 7 and 8 are **dismissed with prejudice**;

- Camara's, Zapotitlan's, Velazquez's, Panora's and Santos's claims under counts 9, 10, 12, 13, 14, 15, and 16 are **dismissed with prejudice**; and

- All other claims and defendants remain in the case.

The plaintiffs' motion for collective certification and court-authorized notice is **denied**.

The Clerk is directed to close all pending motions.

**SO ORDERED.**

Dated:     **New York, New York**
             **March 29, 2018**

                                      John G. Koeltl
                         United States District Judge